**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 5689 |
| v. ) | |
| ) | Judge George M. Marovich |
| ) | |
| CARMEUSE LIME, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On July 19, 2012, plaintiff the United States of America ("United States" or the "government") filed against defendant Carmeuse Lime, Inc. ("Carmeuse") a complaint alleging violations of the Clean Air Act. The next day, the United States lodged a consent decree and, on August 14, 2012, published it in the Federal Register. During the thirty-day comment period, the United States received no comments on the proposed consent decree. The United States has now filed an agreed motion for entry of the consent decree. For the reasons set forth below, the Court approves the consent decree.

**I.  Background**

In its complaint, the United States alleges that defendant Carmeuse violated the Clean Air Act at its facility at 3245 East 103rd Street in Chicago, Illinois (the "Facility"). Carmeuse acquired the Facility in early 2002 and, until November 2009, operated two lime-producing kilns at the Facility. The first lime kiln (which the parties refer to as "No. 4") was constructed in 1964 and has the capacity to produce 550 tons of lime per day. The second lime kiln ("No. 5") was built in 1979 and has the capacity to produce 1600 tons of lime per day. The operation of those

kilns generates lime dust, which is particulate matter regulated by the Clean Air Act. The United States alleges that, from September 2005 to November 2009, Carmeuse released large quantities of lime dust in violation of the Clean Air Act (Count I) and in violation of Carmeuse's Title V operating permit (Count II). In addition, in Count III, the United States alleges that for at least 7,321 minutes during the years 2004 through 2007, Carmeuse violated the opacity limits of the construction permit (which allowed gas emissions so long as they exhibited opacity of less than ten percent) applicable to Kiln No. 5.

Under the proposed consent decree, Carmeuse has agreed to undertake a number of actions. First, Carmeuse will pay a fine of $350,000.00 and spend at least $125,000.00 to replace windows in residential properties in the Englewood, West Englewood or East Side neighborhoods of Chicago. The point of the window project is to replace windows that pose a lead hazard in residences with low-income occupants who cannot afford the replacement cost.

Second, Carmeuse has agreed to engage in certain compliance and corrective actions. For example, Carmeuse will comply with its Title V Operating Permit and its Approval to Construct Permit for the Facility and will comply with the applicable provisions of the Clean Air Act. In addition, Carmeuse will make certain repairs to the No. 4 Kiln and No. 5 Kiln before Carmeuse begins operating those kilns again. Carmeuse has also agreed to take certain actions to control and suppress the release of lime dust. Carmeuse agrees to keep records of its efforts and to report quarterly to the United States.

The consent decree provides that the Court will retain jurisdiction to enforce and to resolve disputes arising under the consent decree. The parties have included in the consent

decree a description of the process they will use in the event of disputes and have agreed on the appropriate penalties for violations of the proposed consent decree.

## II.  Discussion

Before signing a consent decree, the Court must satisfy itself that the decree is reasonable. *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985). In *Donovan*, the Seventh Circuit explained:

> A federal judge has the full powers of an equity judge. So if third parties complain to him that the decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside. Even if no third party complains, the judge has to consider whether the decree he is being asked to sign is lawful and reasonable, as every judicial act must be.
>
> \* \* \*
>
> Although a judge thus must, before signing an equity decree that either affects third parties or imposes continuing duties on him, satisfy himself that the decree is reasonable ('fair, reasonable and adequate,' in the usual formulation, but we think 'reasonable' sums it up fairly and adequately) how deeply the judge must inquire, what factors he must take into account, and what weight he should give the settling parties' desires will vary with the circumstances. The flexible character of the decision makes generalization difficult; but it is safe to suggest that the limitations of judicial competence and the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create a presumption in favor of approving the settlement.

*Donovan*, 752 F.2d at 1177 (internal citations omitted).

In this case, no one has objected to the proposed consent decree. During the comment period, the United States received no comments on the proposed consent decree. In addition, no objections have been filed with this Court. Thus, the Court need consider only whether the proposed consent decree is reasonable.

The Court has reviewed the proposed consent decree and concludes that it is reasonable. The consent decree outlines remedial action to address the conduct alleged to be unlawful in the complaint. The Court will not substitute its own judgment for that of the settling parties with

respect to whether the terms of the proposed consent decree are too lenient or too onerous. Nothing about the terms of the consent decree strike the Court as unreasonable.

The only concern the Court has with the proposed consent decree is that it would enjoin conduct in connection with the production of lime at a facility that ceased producing lime nearly three years before this suit was filed. The parties, however, have informed the Court that Carmeuse intends to resume operation of the kilns, which satisfies the Court's concern about enjoining conduct that has ceased.

**IV.    Conclusion**

Because it is reasonable, the Court approves the consent decree.

ENTER:

*[signature: George M. Marovich]*

George M. Marovich
United States District Judge

DATED: October 23, 2012